# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DALIA MARQUEZ BERNAL,              )
                                   )
          Petitioner,              )
                                   )
     v.                            )          1:14CR23-2
                                   )          1:15CV521
UNITED STATES OF AMERICA,          )
                                   )
          Respondent.              )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 50).[1]  For the reasons that follow, the Court should deny the instant Section 2255 Motion.

## INTRODUCTION

This Court (per Senior United States District Judge James A. Beaty, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, consecutive prison terms of 84 months and 300 months, as a result of her guilty plea to two counts of using and carrying by brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  (Docket Entry 34; see also Docket Entry 1 (Indictment); Docket Entry 21 (Factual Basis); Docket Entry 23 (Plea Agt.); Docket Entry 44 (Plea

---

[1] Parenthetical citations refer to Petitioner's criminal case.

Hrg. Tr.); Docket Entry 45 (Sent'g Hrg. Tr.).) After the United States Court of Appeals for the Fourth Circuit affirmed, <u>United States v. Bernal</u>, 605 F. App'x 152 (4th Cir. 2015), Petitioner timely filed her instant Section 2255 Motion (Docket Entry 50). The United States responded (Docket Entry 53) and Petitioner replied (Docket Entry 56).

<u>DISCUSSION</u>

The instant Section 2255 Motion asserts these <u>four</u> grounds for relief:

1) Petitioner received ineffective assistance because her "[c]ounsel did not advise [Petitioner] that she was pleading to the extreme counts of the [I]ndictment" (Docket Entry 50, ¶ 12(Ground One)(a); <u>see also</u> <u>id.</u> ("[Petitioner] 'never' brandished a firearm. The plea states that [Petitioner] was the driver."));

2) Petitioner received ineffective assistance because her "[c]ounsel instructed [her] to sign for the two counts of guilty of the [I]ndictment . . . [and incorrectly] stated that the counts did not have the the [sic] amount of time that the other counts had" (<u>id.</u>, ¶ 12(Ground Two)(a); <u>see also</u> <u>id.</u> ("I am not an attorney and it is my 4th [sic] amendment right to have counsel that has my best interest and ensures that I understand what it is that I am signing, whether I agree with it or not. That is his job."));

3) Petitioner received ineffective assistance because her "[c]ounsel failed to protect [Petitioner] by not orchestrating a

2

proffer agreement in order to not use the information against [her]" (id., ¶ 12(Ground Three)(a); see also id. ("I was sentenced on information that was suppose [sic] to help me.")); and

4) the "[m]ultiplicity and duplicity of the Indictment" harmed Petitioner (id., ¶ 12(Ground Four); see also id., ¶ 12(Ground Four)(a) ("[T]he government ensured that the multiplicity would garnish [Petitioner] with an extended sentence. Which makes it a harmful error on the sentencing Court's behalf.")).[2]

---

[2] Petitioner's Reply arguably attempts to raise two more claims: (1) her counsel provided ineffective assistance by advising her to agree to a waiver of certain appellate and collateral-attack rights as part of her guilty plea (see Docket Entry 56 at 6); and (2) in light of Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2331 (2015), Petitioner's "participating in this instant offense(s) does not fit what [Section 924(c)(1)(A)] was initially meant for" (Docket Entry 56 at 8). Assuming (for present purposes only) that Petitioner could assert such claims in that manner and that they would qualify as timely, each would fail as a matter of law. The former claim falls short for want of any showing of prejudice (i.e., adverse impact). See Strickland v. Washington, 466 U.S. 668, 687-94 (1984) (holding that, to establish ineffective assistance, a petitioner must show not only deficient performance by counsel, but also resulting prejudice, defined as a reasonable probability of a more favorable outcome absent counsel's deficiency). Specifically, Petitioner cannot demonstrate the required prejudice because (as noted in the Introduction) the Fourth Circuit entertained her direct appeal notwithstanding any appellate waiver in her Plea Agreement and (as articulated in the remainder of the Discussion above) this Court may dispense with Petitioner's instant Section 2255 Motion without regard to any Plea Agreement-based waiver of her collateral-attack rights. Any Johnson challenge to Petitioner's Section 924(c)(1)(A) convictions also could not succeed. See Stewart v. United States, Nos. 1:11CR156-2, 1:14CV657, 2015 WL 8752241, at *2 n.3 (M.D.N.C. Dec. 14, 2015) (unpublished) ("Nor, even if Johnson effectively invalidated the residual clause of the definition of 'crime of violence' in 18 U.S.C. § 924(c)(3)(B), could [the p]etitioner
(continued...)

<u>Grounds One and Two</u>

As quoted above, Grounds One and Two of the instant Section 2255 Motion allege that Petitioner's counsel provided ineffective assistance by failing to ensure that Petitioner understood the length of confinement to which her guilty plea exposed her. Petitioner possessed a federal constitutional right to effective assistance of counsel in her federal criminal case. <u>See</u> U.S. Const. amend. VI; <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). To establish constitutional ineffectiveness, Petitioner must show that her counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-94 (1984). "Surmounting *Strickland*'s high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011)

---

[2](...continued)
contest his Section 924(c) conviction . . ., because [a] '[Section 1951(a)] robbery offense qualifies as a crime of violence under the force clause of 18 U.S.C. § 924(c)(3)(A).'" (quoting <u>United States v. Hunter</u>, No. 2:12CR124, 2015 WL 6443084, at *2 (E.D. Va. Oct. 22, 2015) (unpublished)) (internal brackets omitted)), <u>recommendation adopted</u>, 2016 WL 430492 (M.D.N.C. Feb. 3, 2016) (unpublished) (Beaty, S.J.); <u>accord</u> <u>United States v. Clarke</u>, ___ F. Supp. 3d ___, ___ - ___, 2016 WL 1110306, at *1-6 (D. Md. 2016); <u>United States v. Merinord</u>, No. 5:15CR136, 2015 WL 6457166, at *5 (E.D.N.C. Oct. 26, 2015) (unpublished); <u>United States v. Redmond</u>, No. 3:14CR226MOC, 2015 WL 5999317, at *4 (W.D.N.C. Oct. 13, 2015) (unpublished); <u>see also</u> <u>Stewart</u>, 2015 WL 8752241, at *3 (citing cases precluding argument that Section 924(c)(1)(A) firearm offense and/or Section 1951(a) robbery offense qualified as unconstitutionally vague).

4

(internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)). Grounds One and Two fall short under Strickland, because Petitioner has not demonstrated (and, in light of the record, including most prominently her own sworn admissions, cannot demonstrate) that she failed to appreciate the applicable penalties upon pleading guilty.

The Indictment charged Petitioner and an accomplice, Randall Gray Webb, with eight counts of interfering (or, as to the last count, attempting to interfere) with commerce by robbery (arising from eight separate robberies of seven different businesses in Winston-Salem, North Carolina, from January 22, 2013, to April 7, 2013), in violation of 18 U.S.C. § 1951(a) (Counts One, Two, Four, and Six through Ten), as well as two counts of carrying and using (by brandishing) a firearm during and in relation to a crime of violence (arising from the active employment of a .22 caliber handgun to commit the two robberies that occurred on February 8, 2013, and February 10, 2013, respectively), in violation of 18 U.S.C. § 924(c)(1)(A) (Counts Three and Five). (See Docket Entry

5

1.)[3] Petitioner thereafter agreed in writing to "enter a voluntary plea of guilty to Counts Three and Five of the Indictment" (Docket Entry 23, ¶ 2 (emphasis added); see also id., ¶ 5.a. ("[T]he United States will not oppose a motion to dismiss the remaining counts of the Indictment as to [Petitioner] . . . .")), and, in so doing, admitted that "[t]he nature of these charges and the elements of the charges, which must be proved by the United States beyond a reasonable doubt before [she could] be found guilty thereof, ha[d] been explained to her by her attorney" (id., ¶ 2).

In addition, Petitioner's Plea Agreement recites that she:

1) "underst[ood] that the statutory penalty of Count Three of the Indictment herein provides that she shall be sentenced to a term of imprisonment of not less than seven years; that such term of imprisonment cannot run concurrently with any other term of imprisonment; and that she cannot be placed on probation or receive a suspended sentence" (id., ¶ 2.a. (emphasis added));

2) "underst[ood] that the statutory penalty for Count Five of the Indictment herein provides that she shall be sentenced to imprisonment for not less than twenty-five years; that such term of imprisonment cannot run concurrently with any other term of

---

[3] By citing 18 U.S.C. § 2, along with Sections 924(c)(1)(A) and 1951(a), the Indictment notified Petitioner that she faced liability on an aiding and abetting theory. (See Docket Entry 1.)

<u>imprisonment</u>; that she cannot be placed on probation or receive a suspended sentence" (<u>id.</u>, ¶ 2.b. (emphasis added)); and

    3) "underst[ood] that the sentence to be imposed upon her is within the discretion of the sentencing court <u>subject to the</u> <u>statutory maximum and mandatory minimum penalties set forth above</u>" (<u>id.</u>, ¶ 2.e.).

    The Plea Agreement further documents Petitioner's acknowledgment that:

> [b]y voluntarily pleading guilty to Counts Three and Five of the Indictment herein, [she] knowingly waives and gives up her constitutional rights to plead not guilty, to compel the United States to prove her guilt beyond a reasonable doubt, not to be compelled to incriminate himself [sic], to confront and cross-examine the witnesses against her, to have a jury or judge determine her guilt on the evidence presented, and other constitutional rights which attend a defendant on trial in a criminal case.

(<u>Id.</u>, ¶ 3.) Lastly, it confirms that Petitioner would "plead guilty to Counts Three and Five of the Indictment herein because she is, in fact, guilty and not because of any threats or promises." (<u>Id.</u>, ¶ 4; <u>see also</u> <u>id.</u>, ¶ 9 ("No agreements, representations, or understandings have been made between the parties in this case other than those which are explicitly set forth in this Plea Agreement, and none will be entered into unless executed in writing and signed by all the parties.").)

    The United States filed a Factual Basis in support of Petitioner's guilty plea, relating of note:

## February 8, 2013 Robbery at Tienda Hispana Guerrero

On February 8, 2013, a white male wearing a black zip up sweater, tan type military type pants and a mask entered the Tienda Hispana Guerrero store in Winston-Salem and pointed a black gun into the face of the clerk and demanded money. The victim later described the gun as a "cowboy gun."

The clerk put all of the money from the cash register into a plastic bag and gave it to the suspect. The suspect demanded more money. The clerk told the suspect that there was not any more money, and the suspect left the business with approximately $300 in cash from the store.

## February 10, 2013 Robbery at Tierra Caliente

On February 10, 2013, a white male entered the Tierra Caliente store in Winston-Salem wearing a black ski mask, a black and white striped jacket and holding a small black revolver in his right hand. The suspect pointed the firearm at the clerk and said "give me the money."

The clerk took the money from the register and handed it to the suspect. The suspect grabbed the money with his left hand. He then walked backwards to the front door, pushing it open with his back. The suspect took between $300 and $400.

. . . .

## February 28, 2013 Robbery at Tienda Mexicana Rosy

On February 28, 2013, at approximately 9:01 p.m., the owner of the Tienda Mexicana Rosy, a convenience store in Winston-Salem, was working behind the counter when a white male wearing all black clothing, a black mask and black gloves got out of a silver truck and ran inside the front entrance of the store. The suspect pointed a black revolver at the owner and told him "give me the money or I'll kill you."

The owner emptied all of the cash from the register into a plastic shopping bag. As he was doing this, the suspect said "give me all the hundreds or I will come back and kill you." The owner told the suspect that he

8

had given him all of the money in the register. This amounted to approximately $1,000.00.

The suspect took the shopping bag and ran out the front door. Security footage from the business showed the suspect exiting from the passenger side of a silver or light gray Ford F-150 quad cab, early 200's [sic] model with running boards and chrome wheels. The suspect then ran inside the store.

### March 4, 2013 Robbery at Jay's Convenience Store

On March 4, 2013, at approximately 10:55 a.m, at Jay's Convenience Store in Winston-Salem, a clerk was working at a register and . . . a white male entered the store wearing black clothing and a black ski mask while holding a black handgun in his right hand.

The suspect pointed the handgun at the clerk's upper torso and stated, "Give me the money and give me the beer money." The clerk said "yes, sir," and placed all the cash in a white shopping bag. The clerk handed the white shopping bag to the suspect. The suspect grabbed the bag with his left hand. The suspect immediately left out the front door, and ran toward a neighboring Wendy's. The suspect stole $6,030 from the business.

An employee at a neighboring business, $2.50 Cleaners, reported . . . the suspect was carrying a gun with a long barrel and exited a silver/grey Ford Pick-up parked on the east side parking lot area of Wendy's.

Security Footage from Wendy's showed a gray four door Ford truck pull through the Wendy's parking lot. The armed suspect can also be seen running back . . . and was picked up by the truck.

. . . .

### March 28, 2013 Robbery at Tienda Las Vigas

On March 28, 2013, at approximately 4:48 p.m., a clerk was working at the Tienda Las Vigas store . . . when a male dressed in all black, including a ski mask, hooded jacket and gloves [entered the store]. The clerk further described the man as having blue eyes and holding a handgun.

9

The suspect told the clerk "give me the money." The
clerk gave him approximately $200 in cash. The suspect
told her to give him hundred dollar bills and put them in
a bag. The clerk told the suspect that she had no
hundred dollar bills as she put the money from the
register into a plastic bag. <u>The suspect told the clerk
to give him her rings</u>. <u>The clerk gave the suspect her
diamond engagement ring and her white gold wedding band</u>.
The rings were valued at approximately $400. The suspect
left the business.

An officer responding to the scene <u>observed a silver Ford
F-150 leaving the parking lot</u>. Security footage from the
business showed a male with his face covered and a
revolver in his gloved hand. <u>Security footage from
outside a neighboring business showed the suspect exit
the truck and run towards the store</u>. <u>A second individual
then slowly drove the truck away</u>.

A witness told police that he saw the suspect exit the
store. The witness said that the suspect was white and
bald, but could not give any additional description.

<u>April 7, 2013 Robbery at J&J Food Mart</u>

On April 7, 2013, at approximately 8:33 p.m., a white
male suspect wearing a black ski mask over his face and
carrying a long barreled handgun entered the J&J Food
Mart in Winston-Salem, North Carolina. Once in the store
the suspect pointed the handgun at the store clerk and
demanded money from the register. The clerk put the
money into a bag. The suspect took the bag and left on
foot. The suspect took $202.89 in cash from the store,
as well as Newport Cigarettes valued at $5.11.

<u>Security footage from the robbery revealed a heavy-set
Hispanic woman entering the business and leave shortly
before the robbery</u>.

<u>Investigation and Arrest</u>

Detectives from the Winston-Salem Police Department
(WSPD) believed that the heavy-set Hispanic woman they
saw in the footage from the J&J Food Mart robbery was
casing the business for the robbery, and was probably the
person who was driving the vehicles that had been seen by

10

witnesses and security footage leaving the scenes of the robberies.

Through interviews where detectives showed the photo of the Hispanic woman to various sources, they were able to identify her as [Petitioner]. Witnesses told detectives that [Petitioner] was married to a white man. Detectives learned through DMV records that the silver truck they were looking for was registered to [Petitioner's] mother.

Detectives learned through the Register of Deeds that [Petitioner] was married to Randall Gray Webb. Detectives further learned that Webb had recently pawned a men's wedding band and a women's wedding band and engagement ring. Recalling that similar items were taken from victims in two of the robberies, detectives went to the pawn shop to seize the items. The men's wedding band had already been melted down for scrap, but Detectives seized the women's wedding band and engagement ring. The victim identified the rings as her own.

Officers arrested Webb and [Petitioner]. They were taken to the Public Safety Center and placed in separate interview rooms. Both waived their Miranda rights and agreed to speak with detectives. Both gave full confessions to the robberies. Webb admitted to robbing the first business with a knife, and using a revolver for each of the subsequent robberies. Webb further said that [Petitioner] drove the vehicle in each of the robberies. [Petitioner] admitted to driving each of the three different vehicles used in the robberies. [Petitioner] also explained how they came into possession of each vehicle.

Webb said that the knife and gun would be found at their residence. A search pursuant to a search warrant of the residence produced the handgun and a large hunting knife. Webb further said that the black hooded sweatshirt, black ski mask and black gloves that he wore in the robberies were in the back seat of the truck. Detectives were able to locate these items, as well.

(Docket Entry 21 at 2-10 (emphasis (other than for headings) added).)

Petitioner subsequently appeared before the Court (per Judge Beaty) and averred, in pertinent part, that:

1) she "underst[oo]d [she was] <u>pleading guilty in Count Three</u> with [sic] use of a firearm during and in relation to a crime of violence by brandishing that firearm <u>and</u> that in <u>Count Five</u> [she was] pleading guilty to use of a firearm during and in relation to a crime of violence by brandishing that firearm[ and] that <u>these are incidents that occurred on separate dates</u>" (Docket Entry 44 at 4 (emphasis added));

2) she was "<u>fully satisfied</u> with the services rendered on [her] behalf by [her] attorney" (<u>id.</u> (emphasis added));

3) no one "attempted to force [her] to enter this plea of guilty against [her] own free will" (<u>id.</u> at 5);

4) she "underst[oo]d . . . the possible maximum penalties for <u>Count Three</u> that charges use of a firearm during and in relation to a crime of violence by brandishing for an incident that occurred on February 8, 2013, . . . include the following: <u>not less than 7 years</u>, up to a maximum of life" (<u>id.</u> at 6 (emphasis added));

5) she "underst[oo]d that <u>the sentence imposed as to Count Three will not run concurrently with any other sentence</u> that [she] may receive" (<u>id.</u> at 7 (emphasis added));

6) she "underst[oo]d . . . <u>Count Five</u> will be treated as a second or successive offense . . . [as to which she] fac[ed] a

12

mandatory minimum sentence of 25 years, up to a maximum of life"
(id. (emphasis added));

7) she "underst[oo]d that this sentence of not less than 25
years, up to a maximum of life, would run at the expiration of any
other sentence that [she] may receive, including at the expiration
of the sentence that [she] may receive for Count Three" (id. at 8
(emphasis added));

8) she "underst[oo]d that [she was] facing mandatory minimum
sentences based upon the offenses that [she was] pleading guilty
to" (id. at 9 (emphasis added));

9) she "underst[oo]d [she] ha[d] the right to plead not guilty
and to persist in that plea and have a trial by jury, but by this
plea of guilty [she] g[a]ve up all [her] constitutional rights
related to trial by jury . . . [including] the right to have the
Government prove her guilt beyond a reasonable doubt" (id. at 11);

10) her "attorney explained to [her] what the essential
elements of the offenses are that [she was] pleading guilty to" and
she did not "have any questions as to what those elements of the
offenses are as relates to Counts Three and Five" (id. at 12); and

11) she was, "in fact guilty of those charges" (id. at 12-13
(emphasis added)).

The Court (per Judge Beaty) then found as follows:

> [Petitioner] is fully competent and capable of entering
> an informed plea. [She] is aware of the nature of the
> charges and the consequences of her plea. [Her] plea of

> _guilty is made voluntarily and knowingly_ and is supported
> by an independent basis in fact containing each of the
> essential elements of the offense. [Petitioner's] plea
> is therefore accepted by the Court, and she's now
> adjudged guilty of the offenses as contained in Count
> Three and Count Five of the [I]ndictment.

(Id. at 13 (emphasis added).)

To sum up:

1) Counts Three and Five of the Indictment charged Petitioner (along with her accomplice) with using and carrying (by brandishing) a firearm during and in relation to two separate robberies (of two different businesses on two different dates);

2) the Factual Basis filed in support of Petitioner's guilty plea to Counts Three and Five documented that Petitioner knowingly participated in the two robberies in question (and others) by driving her armed accomplice to and from the crime scene;

3) Petitioner admitted in writing and/or under oath, after consulting with her attorney (with whom she was "fully satisfied"), (A) that she understood the elements of Counts Three and Five, (B) that she understood her guilty plea to Counts Three and Five relieved the United States of its duty to prove those offenses to a jury beyond a reasonable doubt, (C) that she understood the penalties for Counts Three and Five, including the mandatory, consecutive prison sentences of seven and 25 years, and (D) that she was, "in fact, guilty" of Counts Three and Five; and

4) the Court found that Petitioner voluntarily and knowingly had pleaded guilty to Counts Three and Five, as well as that the United States had presented a proper factual basis for her plea(s).

The foregoing record defeats any claim that Petitioner's counsel committed professional negligence in connection with Petitioner's guilty plea and/or that Petitioner suffered any prejudice. Most notably, the record confirms Petitioner understood that, by pleading guilty to Counts Three and Five, she waived her right to compel the United States to establish her guilt and that she faced statutorily-mandated sentences of seven years in prison followed by 25 years in prison. With that understanding, Petitioner knowingly and voluntarily pleaded guilty to the two Section 924(c)(1)(A) offenses charged in Counts Three and Five, consistent with the factual showing made by the United States.

Indeed, the Fourth Circuit concluded as much in connection with Petitioner's direct appeal:

> [Petitioner] has filed a pro se supplemental brief raising the additional issue[] of whether her guilty plea was knowing and voluntary . . . . We affirm.
>
> . . . .
>
> In federal cases, Rule 11 of the Federal Rules of Criminal Procedure "governs the duty of the trial judge before accepting a guilty plea." <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 n.5 (1969). Rule 11 "requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." <u>United States v. Vonn</u>, 535 U.S. 55, 62 (2002). . . .

15

> We have reviewed the record and conclude that the
> district court did not err in accepting [Petitioner's]
> guilty plea, and her plea was knowing and voluntary under
> the totality of the circumstances. On appeal,
> [Petitioner] claims she did not understand that she would
> be sentenced to 32 years, and she suggests that her plea
> may not have been voluntary. However, the record shows
> that she was correctly informed of the mandatory minimum
> penalties before the district court accepted her plea;
> she denied that anyone had forced her to enter her plea
> against her will; she affirmed that she was, in fact,
> guilty; and there was an independent factual basis to
> support her plea. As a result of her plea, the
> Government dismissed eight other counts that would have
> exposed her to an additional consecutive prison sentence.
> Thus, her decision to plead guilty was a voluntary and
> intelligent choice among the available alternatives.

Bernal, 605 F. App'x at 154-55 (parallel citations omitted)
(emphasis added).

Under these circumstances, controlling authority dictates that
the Court deny Petitioner's ineffective assistance of counsel
claims regarding her guilty plea: "A defendant's solemn
declarations in open court affirming a plea agreement carry a
strong presumption of verity, because courts must be able to rely
on the defendant's statements made under oath during a properly
conducted Rule 11 plea colloquy." United States v. Lemaster, 403
F.3d 216, 221 (4th Cir. 2005) (internal brackets, citations,
ellipses, and quotation marks omitted). "Thus, in the absence of
extraordinary circumstances, . . . a district court should, without
holding an evidentiary hearing, dismiss any § 2255 motion that
necessarily relies on allegations that contradict [a defendant's]
sworn statements." Id. at 221–22. Petitioner has identified no

16

such extraordinary circumstances, but instead has offered only demonstrably false and/or irrelevant attacks on her plea. (See Docket Entry 50, ¶ 12(Ground One) & (Ground Two); Docket Entry 56.)

For example, Petitioner's Section 2255 Motion declares that "[c]ounsel did not advise [Petitioner] that she was pleading to the extreme counts of the [I]ndictment" (Docket Entry 50, ¶ 12(Ground One)(a)), and Petitioner's Reply asserts that she "was told about the mandatory minimum sentence of 5 [sic] years [for Count Three], [but] was not told, nor shown that the [punishment for Count Five] was a mandatory minimum of 300 months, to be served consecutively with the original mandatory minimum sentence" (Docket Entry 56 at 3); however, Petitioner and her attorney both signed her Plea Agreement, which expressly (and repeatedly) names Counts Three and Five as the counts to which she would plead guilty and sets out the exact punishment associated with those offenses, including the statutory, mandatory, consecutive imprisonment terms of seven and 25 years, respectively (see Docket Entry 23, ¶¶ 2, 2.a., 2.b., 2.e., 3, 4; see also Docket Entry 44 at 4-9 (documenting Petitioner's averments acknowledging that she wished to plead guilty to Counts Three and Five, as well as that she knew she would receive prison sentences of seven years followed by 25 years).)[4]

---

[4] Notably, although (as quoted above) Petitioner claims in connection with Ground One that her counsel did not adequately explain the consequences of her plea (and implies, in connection
(continued...)

Nor do the comments in Petitioner's Section 2255 Motion that she personally "'never' brandished a firearm" (Docket Entry 50, ¶ 12(Ground One)(a)) and that she "was the driver" (id.) provide any basis for the Court to disregard her sworn admissions of guilt on Counts Three and Five, as such a level of participation in armed robberies supports liability under Section 924(c)(1)(A), see, e.g., United States v. Hintz, 267 F. App'x 407, 411 (6th Cir. 2007) ("[S]ufficient evidence exists for a reasonable juror to conclude that [the defendant] was guilty of each charge. His role as the getaway driver established his . . . aiding and abetting both the armed robbery and the use of a firearm during the armed robbery - events that he wished to bring about and sought to make succeed." (internal citation omitted)); United States v. Woods, 148 F.3d 843,

_____

[4](...continued)
with Ground Two, the same (see Docket Entry 50, ¶ 12(Ground Two)(a)), Petitioner's filings never clearly allege that (much less explain how or why) she failed to understand Judge Beaty's crystal clear statements about the precise nature of the punishment she faced as a result of her plea (see id., ¶ 12(Ground One) & (Ground Two); Docket Entry 56). That fact forecloses any finding of prejudice (as needed to satisfy the Strickland standard). See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) ("[A]ny misinformation [the defendant] may have received from his attorney [about sentencing] was corrected by the trial court at the Rule 11 hearing, and thus [the defendant] was not prejudiced. As we said sitting en banc in United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc ), cert. denied, 513 U.S. 1060 (1994), 'if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.'" (internal parallel citations omitted)).

18

848 (7th Cir. 1998) ("Cases have held that transporting the principal and the firearm to the scene of the crime is facilitation of a § 924(c) violation."). Similarly, the allegation that Petitioner's counsel "stated that the [plea to Counts Three and Five] did not have the amount of time that the other counts had" (Docket Entry 50, ¶ 12(Ground Two)(a)), does not undercut the knowing character of Petitioner's guilty plea, because such a statement (if made) accurately conveys the fact that, "[a]s a result of her plea, the Government dismissed eight other counts that would have exposed [Petitioner] to an additional consecutive prison sentence," Bernal, 605 F. App'x at 155.[5]

---

[5] That consideration also rebuts any suggestion in Petitioner's Reply that she must not have "truly understood" the sentencing implications of her plea because "[n]o one in their right mind, especially a mother with children, small children at that, who depend on her would not [sic] accept a plea of that nature" (Docket Entry 56 at 2; see also id. at 3 (alleging in conclusory fashion that "[t]he negotiations . . . of counsel was [sic] not in the best interest of [Petitioner]" and that "during the plea negotiations [her] counsel did not operate with her best interest in mind"), 9 ("[C]ounsel labored under a conflict of interest, due to the fact that counsel assisted the government in assuring that the sentence sought was in fact secured via the plea agreement that counsel negotiated with the government. The agreement was certainly not in the best interest of [Petitioner]."). Although Petitioner now (in hind-sight) may view her plea bargain as insufficiently favorable, she has not plausibly alleged (let alone presented any credible evidence) that the United States ever offered or would have offered a better deal. (See Docket Entry 50, ¶ 12(Ground One) & (Ground Two); see also Docket Entry 56 at 1-6 (discussing Grounds One and Two), 7 (stating without any evidentiary support that "counsel to [Petitioner] should have been able to negotiate one count of a lesser charge versus two counts of the most damaging charges").) The record thus
(continued...)

As a final matter, Petitioner's Reply apparently seeks to save Grounds One and Two by arguing that her counsel must have inadequately advised her about the guilty plea, because she "would not plead to the same exact charge knowing that it would punish her harshly for the same act of the previous count." (Docket Entry 56 at 4 (emphasis added).) In other words, according to Petitioner, Counts Three and Five both address "the same act" and, with proper advice from her counsel, she never would have agreed to accept punishment twice for "the same act." This argument affords Petitioner no avenue to relief from her guilty plea, because Counts Three and Five do not address "the same act"; rather (as both the Indictment and Factual Basis make clear), Count Three concerns the

_____

[5](...continued)
reflects that Petitioner had to choose either (A) the certainty of a 32-year prison sentence (upon her plea to the firearm offenses) or (B) the likelihood of an even longer term of imprisonment (upon conviction at trial on the firearm and robbery offenses). Given those circumstances, as the Fourth Circuit observed, "her decision to plead guilty was a voluntary and intelligent choice among the available alternatives." Bernal, 605 F. App'x at 155. Moreover, Petitioner has not established that, even now, she would elect to go to trial and to risk conviction on all ten counts of the Indictment; to the contrary, her Section 2255 Motion asks the Court not to strike her plea and to set the case for trial, but "[t]o rectify [her] sentence to reflect her minor role in the instant offense [by imposing] 5 y[ea]rs of incarceration or less as advised by counsel" (Docket Entry 50, Relief Request; see also Docket Entry 56 at 5 (mistakenly arguing that the Court "was not bound to run[] [Petitioner's Section 924(c)(1)(A)] sentence[s] consecutive")). Accordingly, Petitioner cannot prevail on Grounds One and/or Two because she has failed to carry her burden of "show[ing] that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

brandishing of a firearm during and in relation to the robbery of one business on February 8, 2013, and Count Five concerns the brandishing of a firearm during and in relation to the separate robbery of another business on February 10, 2013. (<u>See</u> Docket Entry 1 at 2-4; Docket Entry 21 at 2-3.)

Simply put, Grounds One and Two lack merit.

<u>Ground Three</u>

Ground Three of the instant Section 2255 Motion asserts that Petitioner received ineffective assistance because her "[c]ounsel failed to protect [Petitioner] by not orchestrating a proffer agreement in order to not use the information against [her]." (Docket Entry 50, ¶ 12(Ground Three)(a); <u>see also</u> <u>id.</u> ("I was sentenced on information that was suppose [sic] to help me.").) To prevail on this claim, Petitioner must prove not only that her attorney acted in a professionally negligent manner, but also that prejudice resulted. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-94. Petitioner has not carried (and, given the state of the record, cannot carry) that burden, for reasons well-explained in the Response by the United States: "[Petitioner's] presentence report included no guidelines enhancements, and she received mandatory consecutive sentences as a result of [her guilty plea to offenses] listed in the [I]ndictment and described in detail in the [F]actual [B]asis filed by the government. No additional information was

21

used in determining her sentence . . . ." (Docket Entry 53 at 8.)
The Court therefore should deny this claim.[6]

## Ground Four

Petitioner's final ground for relief challenges the alleged
"[m]ultiplicity and duplicity of the Indictment." (Docket Entry
50, ¶ 12(Ground Four).) As "[s]upporting facts" for this claim,
Ground Four states that "[t]he principal danger in multiplicitous
indictment is that the defendant receiveds [sic] multiple sentences
for a single offense. . . . [I]n this case, the government ensured
that the multiplicity would garnish [Petitioner] with an extended
sentence. Which makes it a harmful error on the sentencing Court's
behalf." (Id., ¶ 12(Ground Four)(a); see also Docket Entry 56 at
8 ("[Multiplicity] is improper charging of the same 'OFFENSE' in
more than one count of a single indictment of [sic] information.

_____

[6] Ground Three also states in conclusory terms that Petitioner
suffered a "violation of [her] 10th Amendment right." (Docket
Entry 50, ¶ 12(Ground Three); see also id., ¶ 12(Ground Three)(a)
(noting that "10th Amendment of the Constitution states that the
powers not delegated to the United States by the Constitution, nor
prohibited by it to the States, are reserved to the States
respectively, or to the people," but without offering "[s]upporting
facts" that would show infringement of that provision); Docket
Entry 56 at 6-7 (failing to mention Tenth Amendment in discussing
Ground Three).) Petitioner cannot collaterally challenge her
convictions in that fashion. See, e.g., Whitley v. United States,
Nos. 1:03CR445, 1:12CV67, 2014 WL 4443295, at *6 n.1 (M.D.N.C.
Sept. 9, 2014) (unpublished) (recommendation of Webster, M.J.,
adopted by Beaty, S.J.) ("Unsupported, conclusory allegations do
not warrant an evidentiary hearing, much less relief.") (citing
Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on
other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir.
1999)), appeal dismissed, 599 F. App'x 111 (4th Cir. 2015).

This is what the government did in having [Petitioner] plea to the same offense in both counts of the [I]ndictment.  The counts are the exact same offenses.  Which is duplicity, regardless of the fact that the government alleges that the same offenses occurred on different days or at different times.").)

As documented in the preceding subsection addressing Grounds One and Two, Petitioner's sentences on Counts Three and Five do not constitute "multiple sentences for a single offense."  To the contrary, the sentence on Count Three punishes her for the offense of aiding and abetting the brandishing of a firearm during and in relation to the robbery of a business on February 8, 2013, and the sentence on Count Five punishes her for the separate offense of aiding and abetting the brandishing of a firearm during and in relation to a second robbery of a different business on February 10, 2013.  Ground Four thus fails as a matter of law.

<u>CONCLUSION</u>

Petitioner's claims entitle her to no collateral relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 50) be denied and that judgment be entered for Respondent, without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 10, 2016

23